### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re STURM, RUGER, & COMPANY, INC. SECURITIES LITIGATION | : <br> : <br> : CIVIL ACTION NO. 3:09cv1293 (VLB) <br> : <br> : CLASS ACTION <br> : <br> : AUGUST 20, 2012 |

### ORDER APPROVING CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION, ATTORNEYS' FEES AND EXPENSES AND CERTIFICATION OF CLASS FOR SETTLEMENT

Before the Court is Lead Plaintiff's request for final approval of class action settlement and plan of allocation of settlement proceeds, certification of the class for settlement purposes and approval of attorneys' fees and expenses.  This matter was initiated by the consolidation of two class action complaints filed on August 13, 2009 and September 30, 2009 respectively on behalf of purchasers of Defendant Sturm, Ruger & Company, Inc.'s ("Sturm") securities alleging violations of the federal securities laws.  For the following reasons, the Court approves the proposed settlement, plan of allocation of settlement proceeds, attorneys' fees and expenses, and certifies the class for settlement purposes.

I.    Background and Terms of Proposed Settlement

On August 13, 2009 and September 30, 2009 two putative securities class action complaints were filed in the District of Connecticut.  See Docket Numbers 3:09-cv-1293 and 3:09-cv-1556 on behalf of purchasers of Sturm securities during the period from April 23, 2007 to October 29, 2007.  On October 13, 2009, Lead

Plaintiff filed a motion for consolidation and appointment as Lead Plaintiff.  On January 11, 2010, the Court consolidated the two actions, appointed Steamfitters Local 449 Pension Fund as Lead Plaintiff and approved its selection of Coughlin Stoia Geller Rudman & Robbins LLP ("Robbins Geller") as Lead Counsel and Diserio, Martin, O'Connor & Castigliono, LLP as Liaison Counsel.  *See* [Dkt. #33].

On March 11, 2010, Lead Plaintiff filed an amended complaint on behalf of the Class alleging that Defendants made materially false and misleading statements and omissions about Sturm's transition to lean manufacturing, product demand, backlog and inventory reductions in violation of the Securities Exchange Act of 1934 including violations of Section 10(b), Rule 10b-5, and Section 20(a) against the individual defendants.  *See* [Dkt. #37].  Lead Plaintiff alleged that Defendants made materially false and misleading statements about implementation of a transformation plan based on lean manufacturing known as the "Ruger Business System."  Lead Plaintiff alleged that the statements were materially false or misleading because they misrepresented and/or failed to disclose the following (i) that reductions in inventory balances by Sturm in the first and second quarter of 2007 had reduced the Company's pasts and components inventories below efficient levers; (ii) that the alleged inventory cuts resulted in Sturm being unable to meet customer orders and target production volumes; (iii) that the Company's "backlog" of unfilled purchase orders was materially inflated because of the Company's inability to meet current production and shipping schedules due to inventory shortages and production problems; (iv) that orders received from the Company's independent distributors were

artificially boosted by the Company's mandated change to firm and non-cancellable purchase order submissions and were not reflective of actual demand for the Company's products; (v) that Sturm's independent distributors were carrying large quantities of the Company's unsold products increasing the risk that these distributors would reduce or curtail their future purchases; and (vi) that based on the above, Defendants had no reasonable basis for their positive statements concerning Sturm's current financial performance and condition.  *Id.*

On April 26, 2010, Defendants filed a motion to dismiss for failure to state a claim arguing that the amended complaint failed to identify the statements alleged to be false or misleading that that any such statements were inactionable statements because they were either accurate statements of historical fact, general expressions of optimism or statements protected by the safe harbor of the Private Litigation Reform Act of 1995 ("PSLRA").  [Dkt. #40].  In addition, Defendants argued that the amended complaint failed to plead loss causation and did not allege facts giving rise to a strong inference of scienter.  *Id.*

On February 7, 2010, the Court denied Defendants' motion to dismiss.  The Court found that certain alleged misstatements were non-actionable puffery or forward looking statements hedged by cautionary language, but held that the alleged misstatements about increased demand, improved net income, increased orders and order backlogs, decreased costs of products sold, and increased shipments were actionable.  [Dkt. #57].  The Court also concluded the amended complaint plausibly alleged scienter and loss causation.  *Id.*

On August 10, 2011, the parties participated in a full-day mediation.  On August 11, 2011, the parties accepted a mediator's proposal of $3,000,000.   The parties executed a Memorandum of Understanding ("MOU") as to the general terms of their agreement on October 31, 2011.  Pursuant to the MOU, Defendant provided Lead Plaintiff with documents for review in order to confirm the fairness of the proposed settlement.  Lead Counsel reviewed and analyzed more than 400 documents related to their allegations regarding manufacturing and production data.

On December 29, 2011, the parties executed a Stipulation of Settlement. Pursuant to the Stipulation of Settlement, a settlement fund of $3,000,000 is being provided.  Lead Plaintiff estimates that the average recovery under the Settlement is roughly $0.23 per damaged share before deduction of any taxes on the income, notice and administration costs, and attorneys' fee and expenses awarded.  [Dkt. ## 88 and 89].  A class member's actual recovery will be a proportion of the Net Settlement Fund determined by that claimant's Recognized Claim as compared to the total Recognized Claims submitted.  The plan of allocation is based on the Price Decline of $6.45 and the PSLRA 90-day look-back amount of $8.55 and provides that for shares of Sturm stocked purchased during the class period from April 23, 2007 through October 24, 2007, the claim per share shall be as follows (i) if sold prior to October 25, 2008, the claim per share is zero; (ii) if retained at the end of October 25, 2007 and sold before January 22, 2008, the claim per share shall be the lesser of (a) the Price Decline of $6.45 or (b) the difference between the purchase price and the selling price; or (c) the difference between the

purchase price per share and the average closing price per share up to the date of sale as set forth in a provided table of share prices; or (iii) if retained, or sold, on or after January 22, 2008, the claim per share shall be the lesser of (a) ) the Price Decline of $6.45 or (b) the difference between the purchase price per share and $8.55 per share. *Id.*

On January 25, 2012, the Lead Plaintiff filed its motion for preliminary approval of settlement.  [Dkt. #87].  The Court preliminary approved the terms of the settlement on May 31, 2012. [Dkt. #94].  The Claims administrator attested that Notices have mailed to over 19,500 potential Class Members and that the Summary Notice was published on June 15, 2012 as directed by the Court.  *See* [Dkt. #99].  Lead Counsel has requested an award of attorneys' fees in the amount of 30% of the Settlement Fund in addition to $45,537.12 in expenses.  *See* [Dkt. #98].  On August 20, 2012, the Court held a fairness hearing.  As of that date, no class member objected to the settlement.  Defendants have taken no position as to Lead Counsel's request for attorneys' fees and the plan of allocation.

II.   **Approval of the Settlement Agreement**

*Standard*

Federal Rule of Civil Procedure 23(e) provides that the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The Rule further provides that:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

*Fed R. Civ. P. 23(e)(1)-(2)*.  Thus, to be properly approved, the settlement must provide reasonable notice to class members of the settlement proposal and the settlement must be procedurally and substantively fair, reasonable, and adequate.

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Matheson v. T-Bone Restaurant, LLC*, No.09Civ.4214, 2011 WL 6268216, at *3 (S.D.N.Y. Dec. 13, 2011) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 113 (2d. Cir. 2005)).

"To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *Id.*  The *Ginnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res.,* 209 F.3d 43 (2d Cir. 2000).

The Second Circuit has further instructed that:

> A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion.   A court determines a settlement's fairness by looking at both the settlement's terms and

the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy.

*Wal-Mart,* 396 F.3d at 116-17 (internal citations and quotations omitted).

*Analysis*

i.    *Adequacy of Notice*

Federal Rule 23(c)(2)(B) defines notice requirements for Rule 23(b)(3)

classes, *providing* that:

the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:

(i)    the nature of the action;
(ii)    the definition of the class certified;
(iii)    the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so
        desires;
(v)    that the court will exclude from the class any member who requests exclusion; and
(vi)    the binding effect of a class judgment on members under Rule 23(c)(3)

The Second Circuit has further clarified that "[t]he standard for the

adequacy of a settlement notice in a class action under either the *Due Process*

*Clause* or the Federal Rules is measured by reasonableness."  *Wal-Mart,* 396 F.3d

at 113.  Further, there are "no rigid rules to determine whether a settlement notice

to the class satisfies constitutional or Rule 23(e) requirements; the settlement

notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.  Notice is adequate if it may be understood by the average class member." (internal citations and quotation marks omitted).  *Id.* at 114.

Here the Notice to the class was reasonable and sufficient to satisfy Rule 23's requirements.  Notices have mailed to over 19,500 potential Class Members and that the Summary Notice was published on June 15, 2012 as directed by the Court.

ii.    *The Settlement was Fair, Reasonable, and Adequate*

a. *Procedural Fairness*

Here, the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.  S*ee e.g., Wal–Mart Stores,* 396 F.3d at 116 (citing *Manual for Complex Litigation, Third,* § 30.42 (1995) (A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery"); *In re Giant Interactive Grp., Inc. Sec. Litig.,* No. 07 Civ. 10588, 2011 WL 5244707, at *4 (S.D.N.Y. Nov. 2, 2011) (parties were entitled to a presumption of fairness where mediator facilitated arms length negotiations); *In re AOL Time Warner, Inc. Sec. Litig.,* No. 02 Civ. 5575, 2006 WL 903236, at *6 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in pre-certification settlement negotiations helped "ensure that the proceedings were free of collusion and undue pressure").  In

addition, Lead Counsel conducted an investigation and evaluation of the claims and reviewed 400 pages of documentation relevant to the allegations of the amended complaint to confirm the fairness of the proposed settlement.  These facts demonstrate that the settlement achieved met the requirements of procedural fairness.

### b. Substantive Fairness

#### i. Complexity, expense and likely duration

Here, the alleged securities claims involve numerous complex legal and factual issues pertaining to Sturm's manufacturing processes and inventory systems.  To pursue these claims to trial would doubtless require extensive, voluminous and costly fact discovery as well as extensive expert discovery and testimony.  "In evaluating the settlement of a securities class action, federal courts … have long recognized that such litigation is notably difficult and notoriously uncertain."  *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999).  To prosecute this case through trial including post trial motion practice and the appellate process would further delay recovery for the class.  "Delay, not just at the trial stage but through post-trial motions and the appellate process would cause Class Members to wait years for any recovery, further reducing its value."  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No.05CIV 10240(SM), 2007 WL 2230177, at *5 (S.D.N.Y. July 27, 2007); *Slomovics v. All for a Dollar, Inc.*, 906 F.Supp. 146, 149 (E.D.N.Y. 1996) ("The potential for this litigation to result in great expense and to continue for a long time suggest that

settlement is in the best interests of the Class.").  The complexity, expense, and duration of the litigation therefore support approval of the settlement.

### ii.   Reaction of the class

It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.  *In re American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y.2001). The parties have indicated that the reaction of the class has been favorable. Notice regarding the Settlement has been sent to over 19,500 potential class members and not a single objection has been received.  "[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement."  *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988) (internal quotation marks and citation omitted).  Accordingly, this factor also weighs in favor of finding the settlement reasonable and adequate.

### iii.   Stage of Proceedings and Amount of Discovery Completed

When weighing this factor, the Court "need not find that the parties have engaged in extensive discovery … Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations and citations omitted), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Here, Lead Counsel conducted an extensive factual investigation and analysis despite the fact that the statutory stay on discovery as provided for by the PSLRA was in place during large portions of the litigation.  Lead Counsel reviewed

publicly available documents, interviewed former Sturm employees, consulted with economic experts who provided advice and assistance on complicated issues such as damages, causation and materiality.  Lastly, Lead Counsel reviewed 400 documents produced by Defendants following the execution of the MOU but prior to the execution of the Stipulation of the Settlement.  The "possibility that more information may become available in the future is not determinative – the Court's inquiry is into whether the plaintiffs have sufficient information to evaluate the adequacy of the proposed settlement, not whether they have availed themselves of all possible information."  *Taft v. Ackermans*, No.02Civ.7951(PKL), 2007 WL 414493, at *6 (S.D.N.Y. Jan. 31, 2007).  The discovery that Lead Counsel has conducted is sufficient to provide a "'clear view of the strengths and weaknesses of their cases' and of the adequacy of the settlement."  *Id.* (quoting *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 745 (S.D.N.Y. 1985)). This factor therefore also supports approval of the settlement.

### iv.  Risks of establishing liability and damages

"In considering the risks of establishing liability and damages and of maintaining the class action through the trial, it is important to keep in mind that this Court's role is not to 'decide the merits of the case or resolve unsettled legal questions.'"  *Davis v. J.P. Morgan Chase & Co.*, 827 F.Supp.2d 172, 177 (W.D.N.Y. 2011) (quoting *Carson v. American Brands, Inc.*, 450 U.S.79. 88 n.14 (1981)). "Since the Court cannot foresee with absolute certainty the outcome of the case, the Court need only assess the risks of litigation against the certainty of recovery

under the proposed settlement" *Id.* at 177-78 (internal quotation marks and citations omitted).  Here the risks of establishing liability and damages are considerable.  In order to prevail on its securities fraud claims, Plaintiffs "must demonstrate that its injuries were caused by defendants' omissions [or misstatement] of material information," *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 196 (2d Cir. 2003), and must also prove that the defendants acted with the required scienter.  *In re Gilat Satellite Networks, Ltd.*, No.CV-02-1510(CPS), 2007 WL 2743675, at *11 (E.D.N.Y. Sept. 18, 2007).   Courts have long recognized that "[e]stablishing scienter is 'a difficult burden to meet.'"  *Id.* (quoting *Adair v. Bristol Tech. Sys., Inc.*, No.97Civ.5874(RWS), 1999 WL 1037878, at *2 (S.D.N.Y. Nov. 16, 1999)).

Here, Defendants have raised several defenses against liability.  First, Defendants argue that scienter could not be established as they were not aware of the inventory and production problems until the end of the third quarter and not earlier as Plaintiffs have alleged.  Second, Defendants argue that it would difficult to establish the requisite showing of loss causation and therefore Plaintiffs would not be able to demonstrate that the price decline was caused by the corrective disclosures regarding the production and inventory problems.  Lastly, Defendants argue that damages would be strongly contested and that a "battle of the experts" would likely ensue.   *See  Klein ex rel. Ira v. PDG Remediation, Inc.*, No.96Civ.4954(DAB), 1999 WL 38179, at *3 (S.D.N.Y. Jan. 28, 1999) (noting that the uncertainty resulting from battle of the experts concerning the extent of damages suffered by the class suggested that the risks were

significant and were outweighed by the benefit of awarding Plaintiffs a certain recovery).   It is clear that the risks of establishing liability and damages in complex securities matter such as this one are outweighed by the benefits of a certain recovery for Plaintiffs.

### v.   Risks of maintaining the class action through trial

Although Plaintiffs indicated that it is their belief that this action meets all the requirements for class certification, Defendants have indicated they would oppose class certification if this case proceeded.  As one court in the Southern District of New York concluded "a contested class certification motion would likely require extensive discovery and briefing.   If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f) the resolution of which would require an additional round of briefing.   Settlement eliminates the risk, expense, and delay inherent in the litigation process."  *Matheson*, 2011 WL 6268216, at *5.   Accordingly, this factor weighs in favor of final approval.

### vi.   Ability of Defendant to withstand a greater judgment

The parties have correctly pointed out that a defendant is "not required to empty its coffers before a settlement can be found adequate."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No.06Civ.5173(RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) (internal quotation marks and citation omitted).  However the parties have not provided the Court with any specific information as to Sturm's assets or its ability to withstand a greater judgment. Accordingly, this factor neither weighs in favor or against settlement.

     vii.   ***Range of reasonableness of the settlement in light of the best***
           ***possible recovery in light of all the attendant risks of litigation***

The eighth and ninth factors call upon the Court to weigh the range of reasonableness of the settlement fund in light of the best possible recovery and attendant risks of litigation.  In doing so, the Court is "called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.  *Grinnell*, 495 F.2d at 462.  However, "[i]t is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement.  Such procedure would emasculate the very purpose for which settlements are made."  *Id.* (ellipsis omitted).  "The determination of whether a settlement amount is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum … Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Matheson*, 2011 WL 6268216, at *6 (internal quotation marks and citations omitted).

Here, the parties indicate that the settlement represents approximately 3.5% of Lead Plaintiff's "most aggressive estimate of maximum provable damages" which "exceeds the average recovery in shareholder litigation."  [Dkt. #97, p. 25].  In light of the legal and factually complexity, the unpredictability of a lengthy trial and the appellate process as discussed above, the settlement

amount is well within the range of reasonableness for similar securities cases. *See In re China Sunergy Sec. Litig.*, No. 07Civ.7895(DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that "average settlement amounts in securities fraud class actions where investors sustained losses over the past decade …have ranged from 3% to 7% of the class members' estimated losses") (internal quotation marks omitted); *In re Union Carbide*, 718 F.Supp. 1099, 1103 (S.D.N.Y. 1989) (acknowledging that "a settlement can be approved even though the benefits amount to a small percentage of the recovery sought" and that the "essence of settlement is compromise.") (internal quotation marks and citation omitted).  For the foregoing reasons, the Court's overall analysis of the *Grinnell* factors support a finding that the settlement is indeed fair, reasonable and adequate.

III.    Approval of the Plan of Allocation

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *Maley v. Del Global Technologies Corp.*, 186 F.Supp.2d 358, 367 (S.D.N.Y. 2002) (internal citation and quotations omitted).   "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.*   "In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.  That is, as a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."  *Chavarria v. New York Airport Serv.,*

*LLC*, No.10-cv-1930(MDG), 2012 WL 2394797, at *8 (E.D.N.Y.  June 25, 2012)

(internal quotations marks and citations omitted).  "Courts also consider the

reaction of the class to a plan of allocation." *Id.*

The Court finds that the proposed Plan of Allocation is fair and supported

by a rational basis as devised by experienced counsel.  The Plan provides that

each authorized claimant will receive a pro rata share of the Net Settlement Fund

and therefore complies with the Supreme Court's decision in *Dura*

*Pharmaceuticals* and requires that "the claimant must have purchased the

security during the Class Period and held it on the day of corrective disclosure,

recognizing that Class Members suffered an economic loss only if they bought

shares during the Class Period and sold them after the Class Period ended."  *In*

*re Veeco Instruments Inc. Sec. Litig.*, No.05MDL0165(CM), 2007 WL 4115809, at

*13 (S.D.N.Y. Nov. 7, 2007) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336

(2005)).  The Plan of allocation takes into account when class members purchased

and sold their Sturm stock to determine an appropriate recovery for that class

member.  Although some class members will benefit more from this allocation

formula that is ultimately appropriate as it recognizes the strengths and

weaknesses of each class members' individual claims and the timing of the sale

of the securities at issue.  "Allocation formulas, including certain discounts for

certain securities, are recognized as an appropriate means to reflect the

comparative strengths and values of different categories of the claim.  There is no

rule that settlements benefit all class members equally." *Id.* (internal quotation

marks and citations omitted); *See also In re Oracle Sec. Litig.,* 1994 WL 502054,

*1, 1994 U.S. Dist. LEXIS 21593, *3 (N.D.Cal. Jun. 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").  Finally, the favorable reaction of the Class supports approval of the Plan as no member has objected to the Plan of Allocation although notices to 19,500 potential Class Members have been distributed.  Accordingly, this Court finds that the Plan of Allocation is a fair, reasonable and adequate method for allocating the Net Settlement Fund.

## IV.   Final Class Certification of the Settlement Class

"Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants . . . Classes certified for settlement purposes, like all other classes, must meet the requirements of Rule 23(a) and at least one of three requirements set forth in Rule 23(b)."  *In re IMAX Sec. Litig., No.06Civ.6138(NRB),* 2012 WL 2359653, at *6 (S.D.N.Y. June 20, 2012) (internal quotation marks and citations omitted).  Here the Court finds that the settlement classes satisfies the requirements of Federal Rule Civil Procedure 23(a) and (b)(3) and accordingly certifies the class for the purpose of settlement.

### A.  Federal Rule of Civil Procedure 23(a) Requirements

### i.   Numerosity

In order to meet Rule 23(a)(1)'s numerosity requirement, a plaintiff must establish that the proposed "class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).   "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the

difficulty or inconvenience of joining all members of the class make use of the class action appropriate.  In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.  Numerosity is presumed when a class consists of forty members or more."  *In re Imax Sec. Litig.*, 272 F.R.D. 138, 146 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).  Here the class exceeds forty members as there were millions of Sturm shares outstanding during the Class Period held by hundreds of shareholders and therefore it is clear that the proposed class satisfied the numerosity requirement.

      ii.    *Commonality and Typicality*

    "'The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 504 F.3d 229, 245 (2d Cir.2007) (quoting *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) ( *per curiam* )). "Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *Robinson v. Metro–N. Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir.2001)). As the Supreme Court has explained, the commonality requirement "tend[s] to merge" with the typicality requirement because "[b]oth serve as guideposts for determining whether ... the named plaintiff's claim and the class claims are so interrelated that the interests

of the class members will be fairly and adequately protected in their absence."
*Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

The commonality requirement "has been applied permissively in securities fraud litigation. In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *Fogarazzo v. Lehman Bros.,* 232 F.R.D. 176, 180 (S.D.N.Y.2005). Allegations that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented" usually satisfy the typicality requirement "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 987 (23 Cir. 1993).

Here, the commonality and typicality requirements are satisfied as there are manifest common questions of law and fact.  The alleged fraud involved material misrepresentation and omissions in written publications which were disseminated to the public and investors.  The claims of the Lead Plaintiff are therefore identical to those of the class as all arise out of the same course of events relating to the alleged material misrepresentations and omissions regarding Sturm's transition to lean manufacturing, product demand, backlog and inventory reductions.

### iii.    Adequacy

"The adequacy requirement of Rule 23(a)(4) involves an inquiry as to whether: (1) the plaintiff's interests are antagonistic to the interests of the other

members of the [c]lass; and (2) plaintiff's counsel are qualified, experienced, and capable of conducting the litigation." *In re IMAX Sec. Litig.*, 2012 WL 2359653, at *7 (internal quotation marks and citation omitted).  There is no indication that the Lead Plaintiff's interests are in conflict with those of the other members of the settlement class particularly where, as here, common questions of law and fact predominate.   In addition, the Court finds that Lead Counsel is qualified to litigate as indicated by the lack of opposition to the settlement and that that Lead Counsel, Robbins, Geller has extensive experience litigating securities class actions.   *See e.g., Pompano Beach Police & Firefighters' Retirement Sys. v. Comtech*, No.CV09-3007(SJF)(AKT), 2010 WL 3924862, at *6 (E.D.N.Y. Aug. 17, 2010) (finding adequacy requirement satisfied where Lead Plaintiff's counsel, Robbins Geller, has extensive experience in securities class actions); L*intz v. Agria Group*, 08Civ.3536, 2008 WL 5191087, at *2 (S.D.N.Y. Dec. 3, 2008) (appointing Robbins Geller to serve as lead counsel and acknowledging that plaintiff "has retained competent and experienced counsel").   Consequently, the Court finds that the adequacy requirement has been satisfied.

   B.  Federal Rule of Civil Procedure 23(b)(3) Requirements

   i.    *Predominance of Common Questions*

   "'Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *In re Imax*, 2012 WL 2359653, at *7 (quoting *Moore v. PaineWebber, Inc. .,* 306 F.3d

1247, 1252 (2d Cir.2002)).  The predominance requirement "readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 689 (1997).  Here, the Lead Plaintiff has alleged that Sturm's material misstatement or omissions caused the class to suffer damages and therefore the predominance requirement has been adequately satisfied.

### ii.   *Superiority to Other Methods of Adjudication*

Here the class action is superior to other available methods for adjudicating the controversy.  This consideration focuses on "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  "The interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions" as evidenced by the fact that no member has objected to the settlement.  *In re Imax*, 2012 WL 2359653, at *8 (internal quotation marks and citation omitted).  In addition, it would likely be cost prohibitive for each class member to maintain an individual action in light of the minimal recovery possible for most class members.  *See Tsereteli v. Residential Asset Securitization Trust 2006-A8*, No.08Civ.10627(LAK), 2012 WL 2532172, at *11 (S.D.N.Y. June 19, 2012) ("Most violations of the federal securities laws ... inflict

economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible.... Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.").  Lastly, there is no indication that any significant difficulties would be encountered in the management of the case as a class action or the administration of the proposed Settlement.  The Court therefore concludes that superiority requirement has been satisfied.  In sum, the Court finds that the requirements of Rules 23(a) and (b) have been met and the Court certifies the class for the purpose of settlement.

### V.    Approval of Attorney Fees

The Second Circuit has traditionally recognized two distinct methods to determine what is a reasonable fee.  The first being the "presumptively reasonable fee" approach otherwise known as the modified "lodestar" approach and the second being a percentage-of-fund approach.   Here Lead Counsel has applied for an award of attorney's fees in the amount of 30% of the Settlement Fund and $45,537.12 in expenses.  The Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).  Moreover, the "Second Circuit has authorized district courts to employ a percentage-of-the-fund method when awarding fees in common fund cases, although the circuit has encouraged district courts to cross-check the percentage fee against counsels 'lodestar'

amount of hourly rate multiplied by hours spent." *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).  "'It bears emphasis that whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances.'" *Id.* (quoting *Goldberger*, 209 F.3d at 47).  When considering the reasonableness of such an award, the Court must consider the following factors: 1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50.  These *Goldberger* factors ultimately determine the reasonableness of a common fund fee.  *Wal-Mart Stores,* 396 F.3d at 121.

      *i.*     *Time and Labor Expended by Counsel*

      Lead counsel expended considerable time and effort litigating this case. Lead Counsel attests that in the aggregate 1,521.5 hours have been spent in the prosecution of this case.  Counsel has conducted an extensive investigation of the issues involved in the case including utilizing investigators and consulting with a damages expert.  Counsel also prepared a detailed mediation statement and performed significant confirmatory discovery.  In light of these efforts, this factor supports an award of a 30% fee.

      *ii.*    *Magnitude and Complexities of the Litigation*

      Courts have long recognized that a securities action "by its very nature, is a complex animal."  *Maley*, 186 F.Supp. 2d at 372 (quotation admitted).  Had this

case proceeded to trial, additional discovery and motion practice including motion of summary judgment would have doubtless prolonged and delayed the resolution of this case.   As noted above, Plaintiffs face substantial factual and legal hurdles to establish that Defendants made material misstatements and omissions about Sturm's transition to lean manufacturing, product demand, backlog and inventory reductions.

### iii.    The Risk of the Litigation

"In considering the risk of litigation as it pertains to fee awards, Courts in this circuit may consider several types of risk.  The most salient is the attorneys' risk in accepting a case on a contingency fee for, as the Second Circuit has noted '[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.'"  *In re Giant*, 279 F.R.D. at 164 (quoting *Grinnel*, 495 F.2d at 570).   Here Lead Counsel undertook this action on a wholly contingent-fee basis, devoting substantial resources to the prosecution of this action for nearly three years.   *Maley*, 186 F.Supp.2d at 372 ("Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated.")   (internal quotation marks and citation omitted).   Here the contingency risk facing Lead Counsel supports the requested award.

In addition, the Court further notes that there are significant additional risks of establishing liability and proving damages in this case

as discussed above that further support the requested award.   For example, Defendants have maintained that Lead Plaintiff cannot establishe scienter because the more plausible explanation for the corrective disclosure at the end of the Class Period is that Defendants did not realize until the third quarter of 2007 that Sturm was experiencing production and inventory problems that would negatively affect its revenue.   Defendants also argue that the alleged misstatements and omissions would not be actionable as accurate statement of historical fact, general expressions of optimism or statements protected by the PSLRA safe harbor.

### iv.   The Requested Fee in Relation to the Settlement and Quality of Representation

The Court finds that the quality of representation was high in this case.   As the Court noted above, Lead Counsel has considerable experience and expertise in prosecuting security class actions.   Here the settlement reached represented approximately 3.5% of Lead Plaintiff's "most aggressive estimate of maximum provable damages" which "exceeds the average recovery in shareholder litigation."   [Dkt. #97, p. 25]. Consequently, this factor also supports the requested award.

### v.   Public Policy Considerations

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered. Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis pursuant to the federal securities laws on behalf of those

who otherwise could not afford to prosecute." *Maley*, 186 F.Supp 2d at 373. Often times in complex securities class action, competent counsel are only retained on a contingent basis. Consequently, "[a] large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken." In *re Union Carbide Corp. Consumer Products Business Sec. Litig.*, 724 F.Supp. 160, 169 (S.D.N.Y. 1989). Courts have therefore found it "imperative that the filing of such contingent lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts." *Maley*, 186 F.Supp. at 373. Accordingly, important public policy considerations will be promoted by the requested award. In sum, the application of the *Goldberger* factors support the reasonableness of the requested award. The Court also notes the reasonableness of the requested award is underscored by the favorable reaction of the class.

### vi. Load Star Cross-Check

"[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger,* 209 F.3d at 50. *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)

(in performing lodestar cross-check calculation, "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records").   Plaintiffs represent that the aggregate loadstar is $712,737.50 for 1,531.50 hours worked whereas the requested fee is $900,000.  Thus the requested fee represents a multiplier of 1.26.

A multiplier of 1.26 is adequate in light of the Court's analysis of the *Goldberger* factors and well within the range of multipliers typically approved by Courts.  *See e.g., Board of Trustees of AFTRA Retirement Fund v. JP Morgan Chase Bank, N.A.*, No.09Civ.686(SAS), 2012 WL 2054907, at *1-2 (S.D.N.Y. June 7, 2012) (finding that attorney fees of 25% of settlement fund with a multiplier of 2.86 to be reasonable); In *re Sumitomo Copper Litig.*, 74 F.Supp. 2d 292, 299 (S.D.N.Y. 1999) (awarding a 27.5% fee and finding multipliers of 3 to 4.5 to be common); *Anwar v. Fairfield Greenwich Ltd.*, No.09-cv-118, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (awarding a 33% fee and finding that a "multiplier of 2.42 is well within the range of lodestar multiplies approved by courts in the Second Circuit and further demonstrates the reasonableness of the requested fee.").   Consequently, the requested free is also reasonable under the lodestar cross-check.

## VI.   Approval of Lead Counsel Expenses

Lead Counsel also requests an award of expenses for $45,537.12 plus interest.  It is well established that "[r]eimbursement of expenses to counsel to create a common fund is appropriate." *In re EVCI Career*

*Colleges Holding Corp. Sec. Litig.*, No.05Civ.10240(CM), 2007 WL 2230177, at *18 (S.D.N.Y. July 27, 2007); *In re Arakis Energy Corp., Sec. Litig.*, No.95CIV3421, 2001 WL 1590512, at *17 n. 12 (E.D.N.Y. Oct. 31, 2001) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."); *Miltland Raleigh-Durham v. Myers,* 840 F.Supp. 235, 239 (S.D.N.Y.1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients") (citation omitted).   The Court has reviewed the affidavits submitted by Lead and finds the expense request to be reasonable.

**VII.   Conclusion**

For the aforementioned reasons, the parties' motion for final approval of settlement and motion for attorneys' fees and expenses is GRANTED.   It is hereby ORDERED that the class is certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23.   If is FURTHER ORDERED that the settlement and plan of allocation is approved as fair, reasonable and adequate.   The Court also awards attorneys' fees of 30% of the Settlement Fund plus expenses in the amount of $45,537.12 plus interest on both amounts.   The Clerk is directed to close the case.


IT IS SO ORDERED.


_____/s/_____

**Hon. Vanessa L. Bryant**

**United States District Judge**

**Dated at Hartford, Connecticut: August 20, 2012**